# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 10, 2022

Lyle W. Cayce
Clerk

No. 21-50169

United States of America,

*Plaintiff—Appellee*,

*versus*

Orlando Alvarado,

*Defendant—Appellant*.

Appeal from the United States District Court
for Western District of Texas
USDC No. 7:20-CR-167-1

Before Jones, Stewart, and Duncan, *Circuit Judges*.

Per Curiam:*

Investigators uncovered significant quantities of methamphetamine ("meth"), firearms, and $10,694 in cash proceeds belonging to Defendant-Appellant Orlando Alvarado and his co-conspirator girlfriend. Following his conviction of conspiracy to possess with intent to distribute meth, Alvarado challenges the district court's conversion of the cash proceeds to meth sales

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

for purposes of his sentence.  Because he fails to show that the district court clearly erred, we AFFIRM.

## BACKGROUND

In June 2020, investigators with the Ector County Sheriff's Office received information that Orlando Alvarado was distributing large quantities of meth in the Midland/Odessa area.  The investigators conducted three controlled buys with Alvarado in a period of eight days, resulting in the purchases of 5.035 grams, 5.494 grams, and 12.076 grams of actual meth, respectively.  Soon thereafter, investigators conducted surveillance on Alvarado's vehicle, knowing that the vehicle had been involved in the narcotics distribution.  During a stop of the vehicle, which was occupied by Alvarado and his girlfriend, Zaria Valenzuela Lujan, agents discovered 28.505 grams of meth, a glass pipe, and a firearm.  A search of Lujan's purse yielded a pistol, a glass pipe, a digital scale, several empty bags, an additional 1 gram of meth, and .4 grams of marijuana.  Investigators arrested Alvarado but released Lujan.

The next day, investigators executed a search warrant on Alvarado and Lujan's hotel room.  They found a pistol, 109.7 grams of meth, 24.137 grams of heroin, 22 grams of marijuana, and $10,694.  One month later, investigators conducted a traffic stop on a vehicle Lujan was driving.  She consented to a search of the vehicle, which uncovered 28.51 grams of meth.  She told the investigators that the meth was not hers, as she had already sold all her meth after Alvarado was arrested.  She claimed that the amount sold was approximately 3 ounces.

Alvarado pleaded guilty without the benefit of a plea agreement to one count of conspiracy to possess with intent to distribute 50 grams or more of actual meth, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  The Presentence Investigation Report

No. 21-50169

("PSR") suggested that Alvarado was accountable for 1.89 kilograms of meth. This number represented the meth actually recovered from Alvarado and Lujan during the controlled buys and the searches[1] (just under 300 grams), but it also represented 1,600 grams of meth converted from the $10,694 cash proceeds. Based on the amount of meth attributed to Alvarado, the PSR indicated a base offense level of 36 under U.S.S.G. § 2D1.1(a)(5). After a three-point reduction for acceptance of responsibility, his total offense level was 33. With this base level offense and a criminal history category IV, his guidelines range was 188 months to 235 months.

Alvarado objected to the PSR's currency-to-meth conversion. He argued that "[t]he Government has not presented evidence that the currency located had a relation to or should be converted to methamphetamine purchases." The probation officer rejected the objection, reinforcing that the cash proceeds "are believed to be from the sales of methamphetamine." Both Alvarado and Lujan were unemployed with "no source of legitimate income." Additionally, the cash proceeds were found with 109.7 grams of meth and a firearm, along with lesser amounts of marijuana and heroin.[2]

Alvarado raised the same objection in the district court, which also did not find it persuasive. The court concluded that it was "no great leap" to conclude that the money was derived from sales of meth, considering both conspirators were unemployed and that the money was found with meth and a weapon. It therefore sentenced Alvarado to 216 months for the drug offense and a consecutive 60-month term for the firearm offense. Alvarado timely appealed.

---

[1] It also included the 3 ounces Lujan admitted to selling.

[2] Alvarado does not suggest than any of the cash proceeds are attributable to marijuana or heroin sales.

No. 21-50169

## STANDARD OF REVIEW

This court reviews the district court's interpretation and application of the guidelines *de novo*. *United States v. Angeles-Mendoza*, 407 F.3d 742, 746 (5th Cir. 2005). But "[t]he district court's calculation of drugs involved in an offense is a factual determination," which is "entitled to considerable deference and will be reversed only if . . . clearly erroneous." *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (quoting *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Bermea*, 30 F.3d 1539, 1575 (5th Cir. 1994). "At sentencing, the factual findings of the district court need only be supported by a preponderance of the evidence." *United States v. King*, 979 F.3d 1075, 1083 (5th Cir. 2020).

## DISCUSSION

On appeal, Alvarez reasserts his challenge to the cash-to-meth conversion, and, for the first time, he raises an ineffective assistance of counsel claim. His former argument lacks merit, and we decline to address his latter argument on this undeveloped record. Accordingly, his sentence will stand.

### I.    Cash-to-Meth Conversion

Alvarado's challenge to the district court's cash-to-meth conversion consists of two parts. *First*, he contends that the district court did not make the necessary findings to convert the currency to drugs. *Second*, he argues that the record does not support the conclusion that the proceeds are attributable to meth sales. Neither point is availing.

4

When a defendant is convicted of a drug offense, his base offense level is determined by the quantity and the type of drugs involved in the offense. *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009); § 2D1.1(a)(5), (c). A comment to the Sentencing Guidelines provide direction for how a district court should approximate drug quantities for purposes of sentencing.

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

§ 2D1.1, cmt. (n.5). Section 2D1.1 is the "only authority for converting money into drug quantity" and, accordingly, judges "must find that one of the two situations contemplated by § 2D1.1 Note 5 is present before doing so." *United States v. Barry*, 978 F.3d 214, 217 (5th Cir. 2020). Importantly, though, "there is no requirement that such a finding be explicit." *Id.* Rather, "[a]dopting the PSR and overruling an objection to it can constitute a sufficient finding where the facts in the PSR support such a finding." *Id. See also United States v. Guzman-Reyes*, 853 F.3d 260, 266 (5th Cir. 2017).

Alvarado contends that the district court failed to make the requisite finding that either (1) no drugs were seized, or (2) the drugs seized do not reflect the scale of the offense. He does not dispute that meth was seized from him and his co-conspirator, but he asserts that the district court was obliged to find that the amounts actually seized do not reflected the scale of the offense before converting, and that the district court failed to do so.

To the contrary, the district court overtly adopted the facts as outlined in the PSR, thus accepting the factual contention found therein that Alvarado was responsible for more drugs than had been seized from him and his co-

conspirator.  This was entirely proper.  A district court "can adopt facts contained in a PSR without inquiry, if those facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Lowder*, 148 F.3d 548, 552 (5th Cir. 1998) (internal quotation marks omitted).  Importantly, "[m]ere objections do not suffice as competent rebuttal evidence."  *Id.* (internal quotation marks omitted).

A PSR generally bears sufficient indicia of reliability for purposes of sentencing, and it is the *defendant*'s burden to show that the information in a PSR is inaccurate by presenting rebuttal evidence that the information is "materially untrue, inaccurate or unreliable."  *United States v. Taylor*, 277 F.3d 721, 724 (5th Cir. 2001).  Alvarado presented no rebuttal evidence, nor has he challenged any of the facts underlying the PSR other than the conversion.  Indeed, his co-conspirator even admitted to selling 3 ounces of meth that were never seized by the investigators, a contention that Alvarado does not contest.  Accordingly, it was not clearly erroneous for the district court to accept the facts as presented in the PSR, including the fact that Alvarado was responsible for more drugs than were actually seized.

Alvarado further complains that the drugs actually seized from him consists of only 15% of the drugs he was ultimately held responsible for due to the conversion and, thus, the record cannot support a conversion so substantial.  But he provides no counter-explanation for the funds, nor does he offer any rebuttal evidence calling the conversion into question.  Moreover, the record amply supports the conversion of the proceeds to meth.  Investigators responded to a tip that Alvarado was distributing large quantities of meth.  They corroborated that tip by conducting three controlled buys from him in a period of only eight days.  Within a month, they had seized hundreds of grams of meth from him and his co-conspirator.  With the meth, investigators uncovered multiple firearms, which this court has recognized are "tools of the trade of those engaged in illegal drug activities."

*United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir. 1987) (internal quotation marks omitted). Furthermore, neither Alvarado nor his co-conspirator had jobs or any other source of legitimate income. We agree with the district court that attributing the currency to meth sales was certainly "no great leap" given the evidence.

## II.    Ineffective Assistance of Counsel

Alvarado further challenges the performance of his trial counsel because his counsel failed to object to a flaw in the conversion calculation in the PSR. Specifically, he contends the PSR calculation improperly used the "wholesale" price of meth rather than the "retail" price of meth, resulting in a higher base level offense.[3] The court declines to consider the merits of this claim on direct appeal.[4] We will only consider an ineffective assistance claim on direct review in "rare cases in which the record allows a reviewing court to fairly evaluate the merits of the claim." *United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014) (quoting *United States v. Aguilar*, 503 F.3d 431, 436 (5th Cir. 2007) (per curiam)). This is not such a case, especially since this argument was not raised or developed in the trial court. *See United States v. Stevens*, 487 F.3d 232, 245 (5th Cir. 2007) *abrogated in part on other grounds, United States v. Vasquez*, 899 F.3d 363, 372 (5th Cir. 2018) ("Where a claim of ineffective assistance of counsel has not been raised below, the exception to our general rule of non-review is typically satisfied only where the actual claim was raised and developed in a post-trial motion to the district court.").

---

[3] Notably, Alvarado's co-conspirator girlfriend was successful with this argument. *United States v. Lujan*, 25 F.4th 324, 328–29 (5th Cir. 2022) (finding the court's use of the wholesale price to amount to clear error).

[4] We also decline to consider the merits of the underlying objection, as Alvarado's retained counsel has not briefed it or otherwise presented it to this court.

No. 21-50169

## **CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.